

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES PALONIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 1738 |
| | ) | |
| JEWEL FOOD STORES, INC., | ) | |
| LOCAL NO. 710, INTERNATIONAL | ) | |
| BROTHERHOOD OF TEAMSTERS, | ) | |
| AND CONCENTRA HEALTH | ) | |
| SERVICES, INC., d/b/a/ | ) | |
| CONCENTRA MEDICAL CENTERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Charles Palonis brought suit against Jewel Food Stores, Inc., Local No. 710 of the International Brotherhood of Teamsters, and Concentra Medical Centers, alleging breach of contract against Jewel, breach of the duty of fair representation against Local 710, and negligence against Concentra. The case is before the Court on Concentra's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court denies Concentra's motion.

### Facts

We take the facts from Palonis' complaint. In 1986, Jewel hired Palonis to work as a truck driver. Pursuant to a collective bargaining agreement with Jewel, Local 710 is the exclusive representative of the company's truck drivers.

According to the complaint, on August 4, 2004, a Jewel supervisor sent Palonis to Concentra for a drug test. Palonis alleges that Concentra's lab technician breached laboratory protocol by failing to seal in Palonis's presence the bottle containing his urine sample and by failing to seal the bag in which the sample was to be maintained. After the drug test, Palonis registered an objection with his Jewel supervisor. Palonis alleges that a physician employed by Concentra contacted him on August 9, 2004 and informed him that the sample may have been adulterated. The following day, Palonis's supervisor directed him to return to Concentra for a second test.

Palonis proceeded to Concentra for a second test as directed. Once again, he alleges, problems arose in the collection of the urine sample. Palonis contends the technician breached the chain of custody by improperly opening the sample vials and placing them near other open vials. The technician denied Palonis' request to disregard the test and to administer a new test. Concentra later reported to Jewel that Palonis had tested positive for cocaine. Palonis contends the test result or test report was false. When he returned to work, he registered an objection regarding the second drug test. Palonis then had his own treating physician administer a drug test, which he says came back negative for narcotics.

Jewel ultimately terminated Palonis based on the positive test result reported by Concentra. Palonis filed a grievance, which was denied. This action followed. Palonis has sued Jewel for improper termination in violation of the collective bargaining agreement, Local 710 for improperly handling his grievance against Jewel, and Concentra for negligence.

## Discussion

Palonis has sued Concentra for negligence in collecting, handling, and testing his urine

2

samples and in reporting the results to Jewel. Compl. ¶¶ 34-35. Concentra has moved to dismiss based upon 735 ILCS 5/2-622, which requires that in any case in which the plaintiff seeks damages for injuries or death "by reason of medical, hospital, or other healing art malpractice," the plaintiff's attorney must, among other things, attach to the complaint a report of a qualified health professional knowledgeable in the relevant issues who has determined that there is a reasonable and meritorious cause for filing the case.

Palonis argues that section 2-622 is a state procedural rule that should not be applied in federal court in a non-diversity case. We need not address that question, for even if section 2-622 applies in federal court, it does not bar Palonis's claim.

Palonis makes a claim of ordinary negligence against Concentra. A drug-testing laboratory like Concentra owes a duty of reasonable care to persons whose specimens it tests for employers or prospective employers. *See Stinson v. Physicians Immediate Care, Ltd.*, 269 Ill. App. 3d 659, 665, 646 N.E.2d 930, 934 (1995).

Palonis's claim against Concentra does not involve "healing art malpractice." The statutory phrase "healing art" has been defined by Illinois courts as covering the "'branch of learning dealing with the restoration of physical or mental health.'" *Milos v. Hall*, 325 Ill. App. 3d 180, 183, 757 N.E.2d 654, 657 (2001) (quoting *Lyon v. Hasbro Inds., Inc.*, 156 Ill. App. 3d 649, 653, 509 N.E.2d 702, 706 (1987)). Concentra's alleged negligence does not arise from application of a "healing art"; rather it acted in the context of an employer-mandated drug test given for purposes of determining Palonis' eligibility to continue working, not (from what we can determine) for the purpose of diagnosing or treating him. There is no contention that Concentra was negligent "while attempting to restore [Palonis] to normal mental or physical

3

condition." *Milos*, 325 Ill. App. 3d at 184, 757 N.E.2d at 657 (finding that section 2-622 did not apply to claim arising from pathologist's inaccurate preparation of autopsy report).

In construing an Illinois statute like section 2-622, a court may consider "the reason and necessity for the legislation, the evils it was designed to remedy, and the objects and purposes the [legislature] sought to achieve." *Eads v. Heritage Enterprises, Inc.*, 204 Ill. 2d 92, 103, 787 N.E.2d 771, 776 (2003). Section 2-622 was adopted in 1985 as part of an effort to ameliorate a perceived crisis in medical malpractice litigation; the legislature hoped to reduce the number of medical malpractice suits that were filed. *Id.*; *Miller v. Rosenberg*, 196 Ill. 2d 50, 60-61, 749 N.E.2d 946, 953 (2001). It is relatively self-evident that Palonis's claim against Concentra has no relationship whatsoever with the perceived ill that the Illinois legislature had in mind when it enacted section 2-622.

Though the Court has found no Illinois cases dealing with the application of section 2-622 to a claim of negligence in administering a drug test for employment purposes, the court in *Williams v. Nat'l RR Passenger Corp.*, 16 F. Supp. 2d 178 (D. Conn. 1998), considered the application of a similar Connecticut statute to a claim by an Amtrak employee similar to the claim Palonis has made. The Connecticut statute required the plaintiff to submit a certificate of good faith in any action for personal injury claimed to have resulted from "the negligence of a health care provider." The statute's purpose, like that of section 2-622, was to deter the filing of baseless medical malpractice claims. *See id.* at 181. The court held that the statute did not apply to the plaintiff's claim. Central to its ruling was the fact that medical malpractice cannot exist in the absence of the plaintiff's consensual consultation with a health care professional for medical treatment and/or advice. *Id.* By contrast, the plaintiff in *Williams* was compelled to provide a

4

urine sample for purposes not of medical treatment, but for drug testing for the benefit of the employer. *Id.* The same is true in the present case.

For these reasons, the Court concludes that section 2-622 does not apply to Palonis's claim against Concentra.

## Conclusion

Defendant Concentra's motion to dismiss [docket no. 22-1] is denied for the reasons stated above. Concentra is ordered to answer the complaint within ten days of this order.

MATTHEW F. KENNELLY
United States District Judge

Date: August 23, 2005

5